UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| James Richard Ayre,            ) | C.A. No.:  0:05:3410-HMH-BM |
|                                           ) | |
| Plaintiff,     ) | |
|                                           ) | |
| Versus                                 ) | |
|                                           ) | |
| Captain Barry Currie; Lt. Tony Riley;  ) | **REPORT AND RECOMMENDATION** |
| Sgt. Rosemary Sanders; Sgt. James  ) | |
| Edmonds; Sgt. Collins; Sgt. Glesner;  ) | |
| Dr. Henry Sparding; County of Berkeley,  ) | |
|                                           ) | |
| Defendants.       ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983. Plaintiff, who at the time of the filing of this action was an inmate being held at the Berkeley County Detention Center, alleges violations of his constitutional rights.

The Defendant Henry Spradlin[1] filed a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., on March 22, 2007. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on March 23, 2007, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted. Plaintiff thereafter filed a memorandum in opposition to Spradlin's motion on April 30, 2007.

The Defendant Spradlin then filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 13, 2007, and a second Roseboro order was entered by the Court on August 14, 2007. The remaining Defendants then filed their own summary judgment

---

[1]This Defendant's name is misspelled as "Sparding" in the Complaint.

1



motion on August 28, 2007, following which a third <u>Roseboro</u> order was entered by the Court on August 30, 2007. Plaintiff filed a memorandum in opposition to these motions on September 17, 2007. These motions are now before the Court for disposition.[2]

## **Background and Evidence**

Plaintiff alleges in his verified Complaint[3] that his right to "limited prosecution" has been violated because on June 19, 2005 he was extradited from Michigan to Berkeley County on general sessions charges for which detainers had been lodged against him. Plaintiff alleges that the Interstate Agreement on Detainers Act protects extradited defendants from being prosecuted on charges for which a detainer was not issued, but that despite this protection he was booked into the Detention Center by Sheriff's deputies on misdemeanor bench warrants and family court bench warrants from 2002-2003, charges on which he was subsequently sentenced in family court on June 20, 2005 and summary/magistrate court on July 21, 2005.

In addition to this claim, Plaintiff makes various claims and allegations concerning the conditions under which he was held while he was at the Berkeley County Detention Center.[4]

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed motions to dismiss and for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[3]In this Circuit, verified complaints by <u>pro se</u> prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. <u>Williams v. Griffin</u>, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff has filed a verified Complaint. Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.

[4]Plaintiff is no longer an inmate at the Berkeley County Detention Center, having been transferred back to the Michigan Department of Corrections on or about March 5, 2007. <u>See</u> Court Document No. 41.



Plaintiff alleges that he directed a request to the Defendant Riley concerning how to have his mail forwarded from the Michigan Department of Corrections since he had ongoing legal actions in Michigan, but that as of the filing of the Complaint he had not received any reply from Riley. Plaintiff also alleges that he did not receive his medical intake exam upon being book into the Detention Center until three to four weeks after he had been booked into the facility, thereby being placed in a "risky situation of exposure to serious health threats" by the Defendant "Sparding", a physician. Plaintiff also complains that correctional officers handled the administering of medications, when this should have been handled by either Spradlin or a nurse. Plaintiff also complains that the Detention Center did not have medical staffing "24/7", and that medical attention "is not guaranteed". Plaintiff alleges that this "places potential health risks on all [Detention Center] detainee(s)."

Plaintiff alleges that there were too many inmates being held at the Detention Center, that inmates were being double celled, and that some inmates have to sleep on the floor. Plaintiff alleges that this violates "fire inspection standards" and placed detainees "in a fire hazard". Plaintiff complains that all of the cell windows at the Detention Center are painted black from the outside, which prevents natural sunlight from entering the cells and creating a "dungeon like atmosphere....". Plaintiff alleges that this amounts to "withholding of a minimum civilized living condition." Plaintiff also alleges that between June 19, 2005 and November 30, 2005, he was granted only a "single 15-20 minute outdoor recreation", and that "withholding outdoor recreation is cruel and unusual punishment."  While Plaintiff does acknowledge that indoor recreation is conducted daily in the combined recreation/dining area, he alleges that there are too many inmates present during that process thereby creating "a stressful, chaotic atmosphere. Not a relaxed period that rec. time is suppose[d] to be." Plaintiff also complains that

3



there is not a correctional officer present on the rec floor, thereby jeopardizing "the safety of the Plaintiff and his fellow detainee(s)."

Plaintiff also complains of a general lack of books, magazines, or newspapers, alleging that only Bibles, the Koran, and limited related study materials are made available to inmates. Plaintiff alleges that this constitutes "an unwarranted deprivation of a safe, wholesome, quiet, non-disruptive recreational activity." Plaintiff alleges that this policy is the fault of the Defendant Sanders. Plaintiff further complains that there is no barber on staff, and that detainees cut each others hair with electric clippers provided by Sanders. Plaintiff alleges that detainees are also only allowed to shave once per week, with razors being issued by Sanders. Plaintiff alleges that sometimes razors are not even provided every week. Plaintiff also complains that inmates are not provided with fingernail clippers, forcing detainees "into the disgusting activity of biting nails."

Plaintiff also complains about the general building maintenance of the Detention Center. Plaintiff complains that the roof leaks, creating a "super slick slip/fall hazard in heavy traffic areas....". Plaintiff also complains that during a two week period in June/July 2005 there was no air conditioning, and that for a little over a week in October/November 2005 his "pod" had no hot water. Plaintiff complains that the security locks on cell doors can be popped open with plastic spoons or cardboard, allowing detainees "almost free movement within the housing unit." Plaintiff alleges that this is a security threat to both detainees and staff. Plaintiff also complains about some "grinding and welding" on cell doors and door frames from November 13 through November 19, 2005, during which the exhaust fan was not on and the pod door was not open, resulting in "dust/fumes" inside the pod. Plaintiff alleges that the Defendant Currie (a



captain) as well as other administrators are guilty of "gross indifference to the well-being of the Plaintiff [ ] and other detainee('s) health" because "the hand of one is the hand of all".

Plaintiff also complains that "housekeeping" in the Detention Center is "done no more than once every 24 hrs." Plaintiff alleges that "once daily cleaning is not sufficient to maintain sanitary conditions for detainee(s)". Plaintiff also complains that on November 30, 2005, one of the commodes in his cell backed up, flooding the restroom/shower area with contaminated toilet water. Plaintiff alleges that this occurred at 2:41 p.m., but that he and other inmates had to endure the "site and smell" for eight hours before any clean-up.

With respect to food, Plaintiff complains that detainee meals sit on serving trays in unheated carts prior to serving, "ensuring detainee(s) cold meals." Plaintiff alleges that this is a "denial of a minimal comfort to detainee('s) standard of living." Plaintiff also complains that when chicken is served, it is undercooked, and that "the failure to ensure proper cooking is an accountability issue the staff and management of [the Detention Center] must face". Plaintiff also complains that the food portions are inadequate to meet the minimum daily recommended amounts of certain food groups.

Finally, Plaintiff complains that the Detention Center "consistently violate[s] the indigent rights of detainee(s) by charging inmate account $2.50 for indigent detainee hygiene packets of soap, shampoo and toothpaste. They also charge an additional $2.25 for indigent stationary packets." Plaintiff also complains that the County violates indigency laws by charging $40.00 for public defenders.

Plaintiff seeks certain injunctive and/or declaratory relief, as well as monetary damages. See generally, Verified Complaint.

5



In support of summary judgment in the case, the Defendant Spradlin has submitted an affidavit from John Pate, who attests that he is a medical doctor whose practice includes medical care and treatment for prison inmates. Pate attests that he has reviewed the Complaint filed in this action, including specifically the allegations made against Henry Spradlin, who is a physician's assistant, not a doctor. Pate attests that he has also reviewed the medical records of the Berkeley County Detention Center relating to the Plaintiff. These medical records consist of a PPD questionnaire completed July 6, 2005, and a record of examination completed July 6, 2005.

Pate attests that a physician's assistant has medical training and duties directed to providing basic medical treatment to patients under the direct supervision of a physician. Pate attests that physician's assistants cannot work without direct supervision of a physician, and do not have responsibility for staffing, patient load, assignment of medical duties, or allocations of resources. Pate attests that none of the Plaintiff's allegations fall within the ambit of responsibility of a physician's assistant, nor are there any allegation in the Complaint as to how Plaintiff suffered any injury as a result of the alleged acts of a physician's assistant. Pate attests that, based on his review of the records, Spradlin's care equaled or exceeded the requisite standard of care for a physician's assistant. See generally, Pate Affidavit.

The remaining Defendants have not submitted any evidence in support of their motion for summary judgment, nor has the Plaintiff submitted any exhibits or evidence in support of his claims.

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

6



there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.  Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

**I.**

Initially, it must be noted that since Plaintiff is no longer incarcerated at the Berkeley County Detention Center, to the extent Plaintiff has requested declaratory and/or injunctive relief, his claims are moot. See Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) ["[T]he transfer of a prisoner render[s] moot his claim for injunctive and declaratory relief."]; Taylors v. Rogers, 781 F.2d 1047, 1048 n. 1 (4th Cir. 1986) [holding that prisoner's transfer mooted a request for declaratory and injunctive relief]. *Cf*. Powell v. McCormack, 395 U.S. 486, 496 (1969) ["[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."]; Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987); Buie v. Jones, 717 F.2d 925, 927-929 (4th Cir. 1983); Weinstein v. Bradford, 423 U.S. 147, 149 (1975). Therefore, any such claims for relief should be dismissed.

7



**II.**

Plaintiff also asserts a claim for monetary damages, and a claim for monetary damages survives an inmate's transfer to another institution. Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir. 2003) [finding that transfer to another jail did not moot damages claim for a suit filed pursuant to § 1915(g)]; Mawhinney v. Henderson, 542 F.2d 1, 2 (2d Cir. 1976). Therefore, Plaintiff's claim for monetary damages in this case is not moot, and must be considered by this Court on the merits.

Defendants offer several defenses to Plaintiff's damages claim. First, Defendants correctly argue that, to the extent Plaintiff's claims are based on actions or harm which may have been suffered by other jail inmates, Plaintiff cannot assert those claims and they are therefore subject to dismissal. Hummer v. Dalton, 657 F. 2d 621 (4th Cir. 1981) [A prisoner proceeding *pro se* may not serve as a "knight errant" for other inmates, but may only seek to enforce his own rights.]. Some other defenses raised by the Defendants, however, are without merit. Defendants' argument that Plaintiff failed to exhaust his administrative remedies prior to bringing this lawsuit was already addressed and rejected in the Report and Recommendation issued in this case on November 8, 2006, and Defendants have submitted no evidence, affidavits or exhibits to warrant a reconsideration of this defense at this time.[5] These Defendants are also not entitled to qualified

---

[5]To the extent Defendants now argue that Plaintiff failed to exhaust his administrative remedies by not appealing any denial of grievances he had filed to the South Carolina administrative law court, even assuming for purposes of summary judgment that Plaintiff did not appeal any denied grievances to the administrative law court, that would not be grounds for dismissal of this action. The fact that the South Carolina Legislature made a court available to prisoners who wanted to appeal a final decision by a jail facility denying a grievance does not alter the federal PLRA by extending its administrative exhaustion requirement to include exhaustion in all state judicial forums. In § 1983 matters, Congress only intended that "administrative remedies" be satisfied. See e.g., Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002) [exhaustion under § 1997e(a) is administrative only; a prisoner who uses all



immunity for the reasons previously stated in the Report and Recommendation of November 8, 2006.

**III.**

With respect to the Defendant Spradlin, Plaintiff acknowledges in his response that it was a mistake to refer to this Defendant as a physician. Plaintiff nevertheless maintains his argument that the medical facilities and care provided to inmates at the Berkeley County Detention Center were deficient during the relevant time period, and that Spradlin should be held liable for this deficiency. The undersigned does not agree.

To maintain a § 1983 medical claim against this Defendant, Plaintiff must present sufficient evidence to raise a material issue of fact as to whether Spradlin was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977) ; Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975).[6] He has failed to do so. In support of summary judgment in the case, Spradlin has submitted an affidavit from a licensed physician who is familiar with the medical care and treatment of prisoners, who has reviewed Plaintiff's medical records, and who opines that none of Plaintiff's allegations fall within the ambit of the responsibility of a

---

administrative options that the state offers need not also pursue judicial review in state court], cert. denied, 437 U.S. 949 (2002); Brown v. Evans Correctional Institution Medical Staff, No. 06-2464, 2007 WL 1290359, at *4 (D.S.C. April 30, 2007).

[6]While Plaintiff was a convicted prisoner from Michigan at the time of his incarceration in Berkeley County, since his incarceration in Berkeley County was for pending South Carolina charges, it could be argued that, for purposes of his claims, he was a pretrial detainee. Nevertheless, even if a pretrial detainee during the time period at issue, the deliberate indifference standard applied to convicted prisoners still applies. See Hill v. Nicodemus, 979 F.2d 987, 991-992 (4th Cir. 1992); see also Bell v. Wolfish, 441 U.S. 520, 535, n. 16 (1979); Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1998) [holding that the Fourteenth Amendment guarantees at least Eighth Amendment protections].



physician's assistant. This physician further opines that the care Spradlin provided during the relevant time period equaled or exceeded the requisite standard of care for a physician's assistant. Plaintiff has provided no evidence to contest the statements by Dr. Pate in his affidavit, or to support the general and conclusory claims in his Complaint that Spradlin was deliberately indifferent to his serious medical needs or should otherwise be held responsible for the general medical policies and procedures in affect at the jail.

This Court is not required to simply accept Plaintiff's conclusory claims and statements without any supporting evidence. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. Plaintiff is not a doctor, and his lay opinion that he should have received additional or different treatment and care than the treatment and care he was provided is not in and of itself sufficient to create a genuine issue of fact as to whether Spradlin or any other medical professional was deliberately indifferent to a serious medical condition. See Scheckells v. Goord, 423 F.supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]; see also Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence, and contrary to the medical evidence on record, insufficient to defeat summary judgment on deliberate indifference claim]). Therefore, the Defendant Spradlin is entitled to summary judgment in this case. see Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994).

10



## IV.

With respect to the remaining Defendants, it is not clear why these Defendants have chosen to submit no evidence to support their arguments for summary judgment in this case, notwithstanding having previously been put on notice that Plaintiff's allegations, at least as of the time this action was filed, were sufficient to state a claim. These Defendants have also previously been advised that they are not entitled to summary judgment based on the mere argument that Plaintiff has failed to state a claim, absent some evidentiary basis for their position. See Report and Recommendation filed November 8, 2006, at p. 2, n. 2, citing to Estrella v. Bryant, 682 F.2d 814, 819 (9th Cir. 1982) [legal memoranda are not evidence]; Gans v. Gray, 612 F.Supp. 608, 619 (E.D.Pa. 1985) [mere statements made in counsel's briefs are not evidence for the purpose of supporting or opposing a motion for summary judgment]; *cf.* Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1358 (4th Cir. 1995) [counsel's statements are not evidence].

Nevertheless, since Plaintiff has now been transferred from the Berkeley County Detention Center back to Michigan, the undersigned finds and concludes that the remaining Defendants' argument that his general conditions of confinement claims should be dismissed because he has failed to show any injury incurred as a result of his incarceration entitles them to summary judgment on these allegations.   See 42 U.S.C. § 1997e(e) ["no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injuries suffered while in custody without a prior showing of physical injury"]. Dr. Pate fails to reference any injuries incurred by the Plaintiff in his summary of the medical records he reviewed. Further, Plaintiff has failed to allege any remedial injuries suffered as a result of the conditions of his confinement in his Complaint, nor has he made any argument with respect to any alleged injuries in his response to these Defendants' motion for summary judgment, even

11



though these Defendants specifically cited Plaintiff's lack of any injury as a basis for summary judgment in their motion. Therefore, summary judgment on these claims is appropriate. See Rankin v. Klevenhagen, 5 F.3d 103, 108 (5th Cir. 1993)[certainly some injury is required]; see also Norman v. Taylor, 25 F.3d at 1263 [absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment claim if his injury de minimis]; See also Thaddeus-X v. Wozniak, No. 99-1720, 2000 WL 712383 at **3 (6th Cir. May 23, 2000)[Plaintiff must show he suffered more than de minimis injury]; Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)[Without proof of more than de minimis physical injury, Plaintiff cannot maintain his claim]; Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; *cf.* Griffin v. DeRosa, 153 Fed.Appx. 851, 852-853 (3rd Cir. Nov. 3, 2005) [finding plaintiff's allegations insufficient to show that prison officials were deliberately indifferent to prisoner's health or safety, as required to state Eighth Amendment claim for failure to protect].

While Plaintiff may have some state law claim with regard to the conditions of his confinement while he was housed at the Berkeley County Detention Center, absent some evidence of an injury suffered by the Plaintiff as a result of these conditions, the undersigned does not find that Plaintiff has submitted sufficient facts to raise a genuine question as to whether his constitutional rights were violated to survive summary judgment. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a



state tort law is sufficient to set forth a claim for a violation of a constitutional right]. Therefore, Plaintiff's claim for monetary damages based on the general conditions of his confinement while at the Berkeley County Detention Center should be dismissed.

## V.

Plaintiff's also claims that he was improperly held in violation of the Interstate Agreement on Detainers Act following extradition from the Michigan Department of Corrections. As was the case with their initial motion to dismiss (dealt with by the Report and Recommendation filed November 8, 2006), the Defendants have not even addressed this issue in their motion for summary judgment.

The undersigned has previously found that the allegations of Plaintiff's Complaint are sufficient to state a claim with respect to this issue. Report and Recommendation, at p. 3. A plaintiff may maintain a § 1983 damage claim based on alleged improprieties in his or her extradition from one state to another if such extradition was in violation of the safeguards provided by the Constitution and statutes of the United States. Wirth v. Surles, 562 F.2d 319, 322-323 (4th Cir. 1977), cert. denied, 435 U.S. 933 (1977). See also Harden v. Pataki, 320 F.3d 1289, 1292-1293 (11th Cir. 2003) [violation of extradition law can serve as a basis for § 1983 action, even though extradition law in question is state law, where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States]; Batten v. Gomez, 324 F.3d 288 (4th Cir. 2003), cert. denied, 124 S.Ct. 103 (2003). Therefore, the Defendants are not entitled to summary judgment on this claim, if indeed they have even intended to ask for such relief in their motion.

However, since Plaintiff's allegation is that the Sheriff's office is responsible for his allegedly improper booking, and no individual sheriff's deputies have been named or

13



identified with respect to this claim, Sheriff Wayne DeWitt is the only Defendant who could be held responsible under this claim as presented, and that is only if he was responsible for a policy or practice of the Department that resulted in this purportedly improper booking. see Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir. 1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)). The remaining Defendants are therefore entitled to dismissal as party Defendants under this claim, and as there are no other viable claims presented against these Defendants,[7] they are all entitled to dismissal as party Defendants, in toto.

As for DeWitt, as there is no evidence before the Court, or even any discussion by the parties, with respect to his potential liability under this claim, he is not entitled to dismissal as a party Defendant at this time.

**VI.**

With respect to the Defendant County of Berkeley, the only claim in the Complaint relating to this Defendant is that the County is violating indigency laws by charging $40.00 for public defenders.[8]

Berkeley County is subject to suit under § 1983 for violations of constitutional rights which are the result of the County's policies or customs, or flow from edicts or acts which may fairly be said to represent official county policy.  Cf. Newport v. Fact Concerts, 453 U.S.

---

[7]See discussion in Section VI of this Report and Recommendation relating to the Defendant Berkeley County, infra.

[8]The separate claim concerning being charged for items by the jail falls under Plaintiff's general conditions of confinement claim and/or claim for injunctive relief.

14



247, 249 (1981) [ Local governments subject to suit under § 1983], (citing Monell v. Dep't of Social Services, 436 U.S. 658 (1978)); see also Higgins v. Correctional Medical Services of Illinois, Inc., 8 F.Supp. 2d 821, 831 (N.D. Ill. 1998); Moore v. Jackson, 123 F.3d 1082, 1087 (8th Cir. 1997); Moore v. Mercier, No. 96-1445, 1997 WL 529994 at **2 (8th Cir. Aug. 7, 1997); Smith v. Prince George County Md., No. 96-2644, 1998 WL 398786 (4th Cir. July 9, 1998). See also Monell, 436 U.S. at 690-691, 694; Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988) (citing Monell, 436 U.S. at 692-694); Greensboro Professional Firefighters, et al. v. City of Greensboro, 64 F.3d 962, 966-967 (4th Cir. 1995), (citing Spell, 824 F.2d at 1391); Addison v. County of Charleston Magistrate Office, No. 06-3308, 2006 WL 3813695 at *3 (D.S.C. Dec. 27, 2006).

> [A] plaintiff must show that a municipality itself has somehow violated federal rights. The clearest way to make such a showing is when the municipality or one of its agencies has adopted an unconstitutional policy, ordinance, regulation or decision.  Absent a specific policy, liability must be premised on a municipal custom or usage so prevalent that it is the equivalent of policy.  A single act or isolated incident does not provide causation sufficient to hold a county or municipality liable on the basis of custom or usage.

Nelson v. Strawn, 897 F.Supp. 252, 259 (D.S.C. 1995) aff'd in part, vacated in part on other grounds, 78 F.3d 579 (1996); see also Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994).

It can be inferred for purposes of summary judgment that the charging of indigents $40.00 for services by a public defender (Plaintiff's claim assumed to be true for purposes of summary judgment) is a policy of the County.[9] However, it is not clear how a constitutional violation would have occurred. The applicable statute specifically provides for a waiver or reduction of this fee if the person is unable to pay the fee. S.C.Code Ann. § 17-3-30(B). Plaintiff

---

[9]See S.C.Code Ann. § 17-3-30(B).

15



has not presented any evidence to show, or even discussed in his allegations, whether he ever applied for waiver of the fee. Further, Plaintiff has not claimed or asserted that he was not provided with or represented by counsel. This claim is without merit, and the Defendant County is therefore entitled to summary judgment.

## Conclusion

Based on the foregoing, it is recommended that the Defendant Spradlin's motion for summary judgment be **granted,** and that Spradlin be **dismissed** as a party Defendant in this case. If this recommendation is adopted by the Court, Spradlin's pending motion to dismiss will be **moot.**

With respect to the remaining Defendants, these Defendants' motion for summary judgment should be **granted** with respect to all claims for injunctive and/or declaratory relief, as well as with respect to all claims for monetary damages arising out of the conditions of Plaintiff's confinement while at the Berkeley County Detention Center, or with respect to Plaintiff allegedly having been charged $40.00 for a public defender.

No request for summary judgment has been filed with respect to Plaintiff's remaining claim under the Interstate Agreement on Detainers Act, and summary judgment should therefore not be granted on that claim. However, as Plaintiff alleges in his Complaint that he was booked into the Detention Center in violation of this agreement by employees of the Berkeley County Sheriff's Department, it is recommended that only Sheriff Wayne Dewitt be maintained as a party Defendant under this claim, and that all other individuals named in this action as well as the County of Berkeley be dismissed as party Defendants.

If the Court adopts this recommendation, the only claim remaining in this action will be Plaintiff's claim relating to violation of his rights under the Interstate Agreement on



Detainers Act, with only Sheriff DeWitt being maintained as a Defendant under that claim.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

September 28, 2007

17



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

18

